UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERNESTO J. GONZALEZ,

                Plaintiff,

v.                                                                              CASE # 19-cv-06230

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC          AMY C. CHAMBERS, ESQ.
  Counsel for Plaintiff                                       KENNETH R. HILLER, ESQ.
600 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                           BLAKELY PRYOR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II     NICOL FITZHUGH, ESQ.
  Counsel for Defendant                                    KATHRYN L. SMITH, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **RELEVANT BACKGROUND**

      A.      **Factual Background**

Plaintiff was born on November 29, 1984 and has a high school education. (Tr. 275, 206). Generally, plaintiff's alleged disability consists of panic attacks, anxiety disorder, and inability to be around others. (Tr. 279). His alleged onset date of disability is October 13, 2015. (Tr. 275). His date last insured is December 31, 2019. (Tr. 274).

      B.      **Procedural History**

On October 13, 2015, plaintiff protectively applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 247, 254). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 9, 2018, plaintiff appeared before the ALJ, Timothy Belford. (Dkt. No. 7-1). On June 29, 2018, ALJ Belford issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-28). On January 31, 2019, the Appeals Council ("AC") denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, plaintiff timely sought judicial review in this Court.

      C.      **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since October 13, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: myofascial back and hip pain; and anxiety and affective disorders (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can tolerate no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, but can never tolerate climbing ladders. He can tolerate no more than frequent handling and fingering, bilaterally. Lastly, he can tolerate no more than simple, routine tasks with no more than occasional decision making, occasional work-related changes, and occasional interaction with coworkers and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 29, 1984, and was 30 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 13, 2015, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-32).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.

First, plaintiff broadly argues the ALJ failed to properly address all of plaintiff's impairments at

Step 2 of the sequential evaluation, therefore causing an error in the subsequent steps. (Dkt. No 12 at 17 [Pl.'s Mem. of Law]). Second, plaintiff argues the ALJ did not properly evaluate the opinion evidence and therefore relied on his own lay opinion. (Dkt. No. 12 at 21). Specifically, plaintiff argues the ALJ failed to account for social interaction limitations, cane restrictions, and episodic pain, fatigue, and chronic pain symptoms. (Dkt. No. 12 at 22, 24, 27).

> **B.    Defendant's Arguments**

In response, defendant makes three arguments. First, defendant argues the ALJ properly considered plaintiff's severe impairments. (Dkt. No. 16 at 20 [Def.'s Mem. of Law]). Second, the ALJ properly assessed a residual functional capacity (RFC) for a range of light work. (Dkt. No. 16 at 22). Lastly, the ALJ's determination is supported by substantial evidence even considering the new evidence plaintiff submitted to the Appeals Council. (Dkt. No. 16 at 28).

## III.    RELEVANT LEGAL STANDARD

> **A.    Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work
despite the impairment; and (5) whether there are significant numbers of jobs in the
national economy that the claimant can perform given the claimant's residual
functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Severe Impairments

Plaintiff argues the ALJ failed to properly address and analyze his panic disorder, plantar

fasciitis and other disorders at step two. (Dkt. No. 12 at 18). In the decision, the ALJ found the

severe impairments of myofascial back and hip pain, and anxiety and affective disorders. (Tr. 18).

The ALJ found the non-severe impairments of hypertension, gastroesophageal reflux disease

(GERD), trigger middle finger of right hand, and obesity. (Tr. 18).

Plaintiff first argues the ALJ must evaluate panic disorder separately from depression and

anxiety because they are separate disorders and have separate symptoms and functional effects.

Plaintiff then cites to Listing 12.06 and Listing 12.04 to highlight they have different listing

requirements to be considered. (Dkt. No. 12 at 19). However, the ALJ's decision clearly states that

the criteria of both listings were considered singly and in combination. (Dkt. No. 19). Indeed,

treating psychiatrist Dr. Connors diagnosed panic disorder (Tr. 373, 422, 436, 444-45, 454, 502),

but he stated it was a symptom of an anxiety disorder. (Tr. 372, 420, 434, 443, 452, 501).

Regardless of terminology used, the ALJ still considered plaintiff's anxiety and panic

symptoms. (Tr. 18-25). Plaintiff reported he had panic attacks triggered by pain and being

surrounded by a lot of people. (Tr. 396, 809). However, primary physician Dr. Parks opined that

medication and treatment controlled plaintiff's anxiety. (Tr. 565). Plaintiff's medical providers

regularly observed throughout the relevant period that plaintiff had no anxiety (Tr. 502, 535, 538,

541, 547, 551, 600, 613, 615). Dr. Luna and Dr. Fassler opined that Plaintiff had limitations in performing complex work with significant interpersonal contact (Tr. 157-59, 167-69, 398), but the ALJ adequately accounted for plaintiff's limitations by restricting him to simple, routine tasks with only occasional interaction with coworkers and the public. (Tr. 20).

Next plaintiff argues the record reflects limiting effects from plantar fasciitis and chronic pain and gratuitously cites to the entire 820-page record. (Dkt. No. 12 at 19). The Court is not required to comb the record in search of evidence in support of plaintiff's position. *See, e.g., Dietrich v. E.I. Du Pont de Nemours & Co.,* No. 02–CV–678S, 2004 WL 2202656, *9, n8 (W.D.N.Y. Sept. 28, 204). To be considered as severe at step two, a physical impairment must be "medically determinable," meaning that it must be "established by objective medical evidence from an acceptable medical source" and "shown by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. §§ 404.1521, 416.921. Chronic pain is not a medically determinable impairment but rather a symptom. Plaintiff's citation to the record of incidents of aggravating factors to his chronic pain all relate to evaluations for back pain, which was found to be a severe impairment. (Dkt. No. 12 at 19, *citing* 662, 703, 712). The only evidence plaintiff cites that is related to plantar fasciitis is testimony. (Dkt. No. 12 at 20 *citing* Tr. 800).

Plaintiff must prove that that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002). As essentially highlighted by plaintiff, substantial record evidence supports ALJ Belford's determination that plaintiff did not have severe plantar fasciitis for a period of at least 12 months. Although plaintiff stated at his hearing that he had plantar fasciitis (Tr. 800), there was little evidence of plantar

fasciitis in the record before the ALJ. Plaintiff had limited ability to "plantar flex" his foot in July 2017 (Tr. 554), but by March 2018, Dr. Connors observed that plaintiff had no foot pain. (Tr. 500). Plaintiff's subjective reports of having plantar fasciitis is insufficient to meet his burden showing it continued for a period of at least 12 months.

### B. Residual Functional Capacity for Light Work

Plaintiff also argued the ALJ based his RFC on lay opinion because he did not properly evaluate the other opinions in the record or base the RFC on a medical opinion. (Dkt. No. 12 at 21). The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). The ALJ limited plaintiff to a reduced range of light work[1] with additional limitations but plaintiff states he failed to account for dealing with others, limitations for off task time, and cane use in the RFC findings. (Dkt. No. 12 at 21). However, the ALJ limited plaintiff to simple, routine tasks that required no more than occasional interaction with coworkers and the public, which limitations are supported by substantial evidence. (Tr. 20).

In determining plaintiff's RFC, the ALJ adequately accounted for plaintiff's moderate limitations in concentration by restricting him to simple and routine tasks. *See Robinson v. Comm'r of Soc. Sec.*, No. 1:16-CV-00835 (MAT), 2018 U.S. Dist. LEXIS 115387, at *7 (W.D.N.Y. July 11, 2018) (limitation to simple and routine tasks adequately accounted for moderate difficulties in

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

concentration); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (same). Despite consultative examiner Dr. Luna and medical consultant Dr. Fassler also opining limitations in dealing with stress, both psychologists concluded plaintiff could perform simple work. (Tr. 159, 169, 398). Additionally, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the Plaintiff's stress-related limitations. *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019); *see also Annarino v. Comm'r of Soc. Sec*., No. 18-cv-130, 2019 WL 464604, at *3 (W.D.N.Y. Sept. 24, 2019) (limitation to simple and routine tasks adequately accounted for moderate limitations in stress).

Plaintiff asserts the ALJ erred by finding only limitations with respect to coworkers and the public but failing to include limitations for supervisors. (Tr. 20). Three of the four jobs the vocational expert identified require "Not Significant" interaction with "People," including coworkers, supervisors, and the public alike. (Tr. 27, 812-19). *See DOT* #239.567-010, 1991 WL 672232 (office helper); *DOT* #706.684-022, 1991 WL 679050 (small parts assembler); *DOT* #559.687-074, 1991 WL 683797 (hand packager). Each of these jobs has a Specific Vocational Preparation (SVP) level of 2, indicating that they are unskilled jobs that require little instruction. *See id*. Any error in the ALJ's decision was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (error is harmless and remand unnecessary where "application of the correct legal principles to the record could lead [only to the same] conclusion"). In this case, there is no material error in the ALJ's RFC determination with respect to social functioning because the jobs the vocational expert provided all require the lowest level of interaction with others, supervisors and coworkers alike. *Fredrick v. Colvin*, No. 4:15-CV-00487-NKL, 2016 WL 755647, at *6-*7 (W.D. Mo. Feb. 25, 2016).

Although plaintiff is correct that subjective complaints of pain are an important part of determining disability, an ALJ is not required to accept the subjective complaints without question. The ALJ's discounting of plaintiff's subjective complaints of chronic pain, fatigue and need for a cane was proper and supported by substantial record evidence. (Tr. 18-25). For instance, the ALJ's decision discussed the cane as well as the evidence contrary to it being medically necessary and used regularly. (Tr. 22). As the ALJ noted, plaintiff requested Dr. Parks prescribe him a cane in 2016 (Tr. 22, 590), which request coincided with Dr. Connors observing that plaintiff was spontaneously reporting more symptoms after he was denied disability due to a lack of sufficient documentation. (Tr. 418). Inconsistent with allegations of the cane being medically necessary, at the appointment when Dr. Parks prescribed plaintiff a cane, she observed that he walked normally without an assistive device. (Tr. 591). Dr. Parks later stated plaintiff chose to use the cane because it was helpful to him. (Tr. 415). Despite the prescription of a cane, she and other medical providers observed that he walked normally without the cane. (Tr. 421, 435, 514-15, 585, 588).

Plaintiff's medical records are also inconsistent with the severity of physical limitations and subjective complaints of pain and fatigue. Multiple MRIs and x-rays showed that plaintiff had no more than mild degenerative changes in his back, arms, and legs. (Tr. 383, 501, 622, 642, 644, 647-48, 650-51, 666, 696). Pain specialist Dr. Kent opined that plaintiff's symptom intensity was out of proportion with his physical examination and imaging studies and non-physiologic. (Tr. 701). Dr. Kent also observed that plaintiff's reported symptoms did not correspond to any clear dermatome or peripheral nerve distribution. (Tr. 700). Consultative examiner Dr. Zaman opined that plaintiff had only mild limitations in bending, lifting, carrying, and walking. (Tr. 403). Throughout the relevant period, plaintiff's medical providers regularly observed plaintiff had no

fatigue. (Tr. 381, 383, 479, 514, 517, 520, 523, 535, 537, 544, 546, 550, 571, 574, 598, 603, 620, 622, 624, 626, 628, 633, 635, 639-40, 726, 729, 732, 735, 737).

In addition to mild findings, providers also questioned plaintiff's motivation and expressed the opinion he was malingering and exaggerating his symptoms to obtain disability benefits and narcotic pain medication. (Tr. 422-443). Dr. Connors noted that plaintiff made multiple inconsistent statements about his back pain as well as psychological symptoms. (Tr. 417-18, 423). Numerous providers also raised issues with plaintiff's use of narcotic pain medication from off the street and possible secondary gain due to drug use. (Tr. 374, 450, 454, 483, 522, 540-41, 547, 561, 570-71, 701-02, 754, 756). Although not in front of the ALJ, the subsequent records submitted to the Appeals Council also state plaintiff was malingering and exaggerating his symptoms.

Lastly, an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The record contains an opinion from Dr. Parks which summarily states plaintiff is unable to work.  Plaintiff argues it is evidence of greater limitations than found by the ALJ. (Dkt. No. 12 at 29). However, Dr. Parks ascribed no specific functional limitations and merely stated that plaintiff cannot work. (Tr. 472-73). It is well established that an ALJ is not required to attribute conclusory statements of ability to work any significant weight. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (reserving for the Commissioner the responsibility "for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability"). Further, Dr. Parks' medical records were also inconsistent with her assessment because she had also noted the plaintiff's orthopedic conditions were very mild and he was dramatic about his pain. (Tr. 586, 593). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). It was not an error for the ALJ to

formulate an RFC determination which did not correspond directly to a specific medical opinion, specifically Dr. Parks' conclusory opinion. *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, at 79 (2d Cir. Nov. 13, 2018) (the ALJ's RFC determination need not perfectly correspond with any of the opinions of medical sources cited in his decision).

This record contains other medical opinion evidence that supports the ALJ's RFC determination. Dr. Luna indicated plaintiff had some moderate limitations in concentration, but no significant limitations in his ability to understand and perform simple tasks. (Tr. 398). Dr. Fassler opined that plaintiff could perform a range of unskilled work that did not require a significant amount of interpersonal contact. (Tr. 159, 169). Substantial record evidence supports the ALJ's determination of the facts and the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F.App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston*, 904 F.2d at 126).

### C.  Evidence Submitted to the Appeals Council

After the ALJ's June 2018 decision, plaintiff submitted 98 pages of evidence to the Appeals Council. (Tr. 34-137). Although plaintiff identified them as new evidence, 19 pages duplicated those already in the record before the ALJ. (Tr. 44-56, 116-121). The Appeals Council found the majority of the evidence did not show reasonable possibility that it would change the outcome of the decision and it was not exhibited. (Tr. 2). The submitted medical records from Anthony L. Jordan Health Center, dated August 10, 2018 (7 pages) and a treatment medical source statement from Sara Klatte, FNP, dated August 10, 2018 (6 pages) were found to not relate to the period at issue and also not exhibited. (Tr. 2).

"Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of [a] Request for Review." *Hightower v. Colvin*, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013) (citing 20 C.F.R. §§ 416.1470(b) and 416.1476(b)(1)).  The Appeals

Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision. *Id.* Evidence is new if it is not cumulative of what is already in the record. *Simon v. Berryhill, No. 1:16-cv-04088(FB), 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017).* It is material if it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently. *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)). Indeed, evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing, but the Appeals Council does not have to consider evidence that does not provide additional information about the claimant's functioning during the relevant time period. *Pulos v. Comm'r of Soc. Sec.*, No. 1:18-CV-00248 EAW, 2018 WL 5801551, at *6 (W.D.N.Y. Nov. 5, 2018).

Defendant initially argues plaintiff's new evidence does not comply with the 5-day rule, which requires claimants to (a) make every reasonable effort to ensure that the ALJ receives all evidence, and (b) inform the agency about or submit any written evidence no later than 5 business days before the date of the scheduled hearing. 20 C.F.R. §§ 404.935(a), 416.1435(a) (the "5-day rule"); Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-90997 (Dec. 16, 2016). Indeed, at the hearing, plaintiff's counsel stated which records were outstanding and was allowed additional time to submit 131 pages of late records from URMC Pain Treatment Center and Woodward Health Center. (Tr. 654-786, 791). He did not state any records were missing from Liberty Resources but rather stated he did not want the ALJ to worry about additional evidence. (Tr. 332, 789-793). It is

noted that the 5-day rule exists to prevent the practice of claimants neglectfully waiting until after the ALJ issues an unfavorable decision.

Regardless of submission timelines, the new evidence does not create a reasonable likelihood that the ALJ would have decided the case differently. The relevant inquiry is whether the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010). This Court's role is limited to deciding whether the ALJ's determination was supported by substantial evidence on the record as a whole, including the new evidence. *See Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

Plaintiff submitted 75 pages of new documentation from Dr. Connors during the relevant period. However, Dr. Connors noted that no observable diagnostic testing explained plaintiff's reported pain, and he opined that plaintiff's reports of pain were vague, inconsistent, "incongruent with [his] medical studies," and changing in location, intensity, and level of distress. (Tr. 86-87, 90, 93, 95, 98, 101, 104, 107, 112, 114-15). Although plaintiff told Dr. Connors that he had fibromyalgia, the doctor succinctly reported that plaintiff's pain reports and locations were not consistent with fibromyalgia. (Tr. 66, 78, 104). Dr. Connors additionally observed that plaintiff sometimes did not exhibit the same pain behaviors in the parking lot and waiting room as he demonstrated during examinations. (Tr. 66, 78, 104). Plaintiff told Dr. Connors that he did not "walk very much" due to foot pain but admitted that they went "on long walks at parks" with his girlfriend (Tr. 104-05). Dr. Connors said that plaintiff's alleged pain had various contradictions and a "factitious disorder component," and he thought Plaintiff was seeking validation for narcotic pain medications and "[m]alingering…due to component of secondary gain of trying to get disability" (Tr. 91, 95, 101, 104, 107, 114).

14

Plaintiff argues the new evidence included a treating medical source statement from Dr. Parks dated August 10, 2018. (Dkt. No. 12 at 16). This assertion is a mischaracterization of the evidence as the statement was completed and signed only by a nurse practitioner. (Tr. 39). Nurse Practitioner (NP) Klatte completed a questionnaire regarding plaintiff's physical symptoms in August 2018 (Tr. 36-39), but she noted prior to completing the questionnaire that plaintiff said that his symptoms were "getting worser" after his June 2018 hearing and the end of the relevant period. (Tr. 41). NP Klatte based her questionnaire on plaintiff's subjective reports, and she admitted that plaintiff had minimal objective findings to back up his complaints and no clear cause of pain. (Tr. 36). *See Fagner v. Berryhill*, No. 14-cv-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017) (ALJ need not accept opinion that is primarily based on the claimant's subjective reports). Because NP Klatte's questionnaire appears primarily based on plaintiff's subjective reports of post-decision worsening, it is not material and does not create a reasonable likelihood that the ALJ would have changed his decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (new evidence is only relevant if it is material and "relates to the period on or before the date of the administrative law judge hearing decision"). Additionally, NP Klatte was not an "acceptable medical source" during the relevant time period and the treating physician rule would not have applied. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2015). The ALJ's decision is supported by substantial evidence, even considering plaintiff's late-submitted medical evidence (Tr. 34-137).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED;** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED.**

Dated:  August 6, 2020
Rochester, New York

_J. Gregory Wehrman_
HON. J. Gregory Wehrman
United States Magistrate Judge